IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TITO MORENO,** | : |
| **Plaintiff** | : Civil No. 1:CV-12-1553 |
| v. | : |
| **PENN NATIONAL GAMING, Inc. A.K.A. HOLLYWOOD CASINO AT PENN NATIONAL RACE COURSE, and MARK LOEWE, as Director of Racing and as an Individual,** | : Judge Sylvia H. Rambo |
| **Defendants** | : |

## **M E M O R A N D U M**

Plaintiff, Tito Moreno ("Plaintiff" or "Moreno"), a licensed horse trainer, has filed suit under 42 U.S.C. § 1983 claiming that his constitutional rights were violated as a result of sanctions issued against him without a hearing. (Doc. 1.) Before the court is Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction. On August 10, 2012, the court granted Plaintiff's request for a temporary restraining order and scheduled a hearing on a preliminary injunction for August 16, 2012. (Doc. 6.) For the reasons set forth below, the court will grant Plaintiff's motion for a preliminary injunction.

**I.    Background**

    **a.    Parties**

Moreno is a horse trainer licensed by the Pennsylvania State Horse Racing Commission (the "Commission"). Mountainview Thoroughbred Racing Association, Inc. ("Mountainview") and Penn National Turf Club, Inc. ("Turf

Club")[1] are racing associations under the Race Horse Industry Reform Act, 4 P.S. § 325.101 *et seq.*, that operate the Penn National Race Course ("Penn National"). Defendant Mark Loewe is the Vice President of Racing at Penn National.

### b. Facts

On August 1, 2012, two inspectors of the Pennsylvania State Racing Commission ("state inspectors") witnessed Moreno and his son exit a stall in Barn 4 at Penn National. The stall housed a horse that Moreno trained. The state inspectors saw two syringes with needles in Moreno's possession. The inspectors confiscated those materials and subsequently searched Moreno's truck, where they found an injectable bottle Catosal. Pennsylvania state racing regulations provide that it is illegal to possess injection equipment on the track grounds. Specifically, 58 Pa. Code § 163.302(3) provides:

> A person other than a veterinarian may not have in his possession equipment for hypodermic injection of a substance for hypodermic administration. A person other than a veterinarian may not have a foreign substance, within the area of the race track complex, which can be administered internally to a horse by a route, except for an existing condition and as prescribed by a veterinarian.

After confiscating the syringes and needles, state inspector Brandon Mitchem was joined at the scene by Track Manager Jeffrey Cassel. Mitchem packaged the needles and syringes for testing. The state veterinarian then arrived and drew blood samples from the horse for testing at a state laboratory. The state

---

[1] At the hearing, Plaintiff moved to amend his complaint to add Mountainview and Turf Club as Defendants. Defendant did not object to adding Mountainview and Turf Club, but argued that Penn National Gaming, Inc. should be removed as a Defendant. Plaintiff objected to the removal of Penn National Gaming, Inc. as Defendant. Plaintiff also moved to add Daniel Tufano, Executive Secretary of the Commission, however neither Mr. Tufano nor counsel representing Mr. Tufano were present to address the motion. Because Plaintiff's motion was partially opposed, the court ordered that a proper paper motion be filed to amend the pleadings. That motion has not yet been filed.

inspectors informed the track stewards, who are employees of the Commission tasked with regulating the conduct of racing, about the incident and scratched the horse in question from the race that evening.

Some details surrounding the incident are disputed. Moreno claims that the needles and injectables were for animals on a separate farm and in particular were for use on his goat. He further claims that he rushed to the track that day and was unaware that the syringes were in his pocket. He claims that the syringes contained vitamin B.[2] Inspector Mitchem, meanwhile, claims that Moreno tried to hide the syringes in his shirt or pants and that Moreno tried to push past him when confronted.

Defendant Mark Loewe, Vice President of Racing at Penn National, was informed of the incident by David Bailey, Racing Secretary. Loewe further was informed that Moreno was entering and racing horses on August 2, 2012. Loewe called the state stewards to find out why Moreno was permitted to participate, and he was told that no action would be taken against Moreno until the results of the lab tests are known.

Loewe scheduled a meeting with Moreno on August 3, 2012 to discuss the incident and the actions that would be taken in response to the alleged violations. Present at that meeting were Moreno, his attorney Alan Pincus, Loewe, and Bailey. At that meeting, Attorney Pincus asked Loewe not to eject Moreno from the track

---

[2] The court's research reveals that Catosal contains Butaphosphan, an organic phosphorus, and cyanocobalamin, or Vitamin B12. Catosal can be administered to alleviate Vitamin B12 deficiencies. *See* Catosal, Bayer, http://www.bayerdvm.com/Products/Catosal/C09007CatosalTechSheet.pdf (last accessed August 20, 2012).

until the test results were returned, citing to the permanent damage to one's reputation caused by such an ejection.

Loewe considered Attorney Pincus's suggestion and consulted with Christopher McErlean, Corporate Vice President Racing, PNGI. Loewe then called a second meeting that day which was attended by the same individuals – Moreno, Attorney Pincus, Loewe and Bailey. Loewe acquiesced to Attorney Pincus's request to not formally eject Moreno, and instead issued the following sanctions, memorialized in an August 3, 2012 email from Loewe to Attorney Pincus:

> Effective as of this date, no entries will be accepted on Mr. Moreno's horses at any PNG property prior to the release of any information or findings of the PSHRC.
>
> Any horses currently In To Go will be scratched. (A special exemption has been made for Top Exchange due to his entry in a Stake Race on August 3.)
>
> Any further violation of any Penn National rule or policy, or should Mr. Moreno receive any other rule violations from any other recognized jurisdiction, will result in immediate ejection from the grounds of Penn National Race Course and revocation of all racing privileges.
>
> No horses currently under Mr. Moreno's care may be transferred without the approval of the racing office.
>
> All horses under Mr. Moreno's care must be off the grounds of Penn National by Monday August, 13 at 12 noon.
>
> Penn National reserves the right to take further action after the findings of the PSHRC have been released.

(Def. Ex. A.)

Although these sanctions represent an "accommodation" to Moreno by forgoing a formal ejection, there is no evidence that Moreno specifically agreed to these sanctions. To the contrary, on August 4, 2012, Moreno appealed the sanctions.

Moreno argues that the sanctions constitute an "ejection" or "constructive ejection" thus entitling him to a hearing under the state horse racing regulations. In his appeal, Moreno requested a hearing on the sanctions and requested a supersedeas of the ejection until a hearing is held. The Commission did not respond to Moreno's request, asserting that because Moreno was not formally ejected, he was not entitled to a hearing under the regulations. On August 9, 2012, Moreno filed a complaint in federal court, claiming that Defendants' actions violated his constitutional right to a hearing provided under 58 Pa. Code § 165.231 (Count II) and requested a temporary restraining order and preliminary injunction (Count I).[3] (Doc. 2.) Plaintiff also filed a Memorandum of Law in Support of his Application for T.R.O. and Preliminary Injunction. (Doc. 3.) By order dated August 10, 2012, the court granted the request as follows:

> Defendants and their officers, agents, employees and all other persons acting in concert with them hereby are immediately and temporarily enjoined and restrained from excluding Moreno from participating at Penn National, from excluding Moreno's horses from entering races at Penn National, from ordering Moreno to remove his horses from the grounds of Penn National and from preventing Moreno from transferring his horses prior to Moreno receiving a hearing or until further order of this court.

(Doc. 6.) The court also scheduled a hearing on the preliminary injunction for August 16, 2012. On August 14, 2012, Mountainview and the Turf Club formally ejected Moreno from Penn National facilities. On August 15, 2012, Defendants filed a brief in opposition to Plaintiff's Application for T.R.O. and Preliminary Injunction. (Doc. 11.) The hearing has been held and the motion is now ripe for disposition.

---

[3] Plaintiff's complaint also seeks declaratory relief (Count III) and brings a claim for tortious interference (Count IV).

## II.     Legal Standard

The test for whether to grant a preliminary injunction requires the court to consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the non-moving party; and (4) whether granting the preliminary relief will be in the public interest.

*ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc); *Miller v. Skumanick*, 605 F. Supp. 2d. 634, 641 (M.D. Pa. 2009). The above factors merely "structure the inquiry" and no one element will necessarily determine the outcome. The court must engage in a delicate balancing of all the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary injunction to the final hearing on the merits. *Miller,* 605 F. Supp. 2d at 641 (citing *Constructors Assoc. of Western Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978)). The movant bears the burden of establishing these elements. *Id.* (citing *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000)).

## III.     Discussion

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in

>an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2002).  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted).  To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000);  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

Before addressing the preliminary injunction criteria, the court will address Defendants' jurisdictional argument that the State has taken no action, rendering Plaintiff's Section 1983 claim meritless and therefore leaving this court without jurisdiction.

Defendants argue that the challenged actions at issue here, namely the sanctions issued against Plaintiff, were committed by private actors, not State actors.  In support of their argument, Defendants assert that the decision to sanction Moreno was made solely by Loewe, a private actor employed by Mountainview.  Defendants further argue that Plaintiff has not shown that Defendants' actions constitute State action because there is not a sufficiently close nexus between the challenged action and the State.  Thus, Defendants conclude that Loewe was not "acting under color of state law," as required to state a Section 1983 claim.  Plaintiff counters that there is a sufficiently close nexus between Defendants and the Commission such that

Defendants' actions constitute a "state action" and therefore his Section 1983 claim is proper.

  This issue was directly addressed in *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir. 1979). In *Fitzgerald*, the plaintiff, a licensed horse trainer and driver, was expelled[4] from a racing track as a result of a violation of a state harness racing commission rule. No hearing was held on the plaintiff's expulsion, and consequently the plaintiff brought a Section 1983 claim against, *inter alia*, Mountain Laurel Racing, Inc., a private Pennsylvania corporation licensed by the Pennsylvania State Harness Racing Commission. The court, in an extensive analysis of relevant caselaw, set forth two tests to determine whether a private actor's actions constitute State action sufficient to establish a jurisdictional basis for a Section 1983 suit: 1) the "symbiotic relationship" test[5] and, 2) the "close nexus" test. Both tests turn on the precise nature of the State's relationship with the private actor and the particular facts of the case. *Id.* at 594.

  Plaintiff argues that the "close nexus" test, which inquires into whether "there is a sufficiently close nexus between the State and the challenged action of the

---

[4] Similar to this case, the plaintiff in *Fitzgerald* was not formally ejected, but instead was "expelled" from the stall space provided by the track. The Third Circuit Court of Appeals affirmed district court's finding that the expulsion was tantamount to an ejection. 607 F.2d at 598. The court reasoned that the "act of expelling Fitzgerald from the stall space had the extreme effect of barring him from any activity at the track. Thus, the district court found that Fitzgerald's eviction 'went far beyond a simple eviction from rented space.' Indeed, the gravamen of Fitzgerald's complaint centers not on the denial of stall space but on the effect of the expulsion which prevents him from training and driving horses at the [track]." *Id.*

[5] The "symbiotic relationship" test states that "when the State has not clearly directed the private act of discrimination but where the private enterprise has a 'symbiotic' relationship with the State, state action is present." *Fitzgerald*, 607 F.2d at 594. In this case, Plaintiff argued only briefly and in the alternative regarding this test, and in light of the court's holding below, the court need not further address the application of this test.

regulated entity so that the action of the latter may be fairly treated as that of the State itself," is satisfied here. *Id.* at 595. A key issue to determine is whether the State participated in the challenged action by "putting its weight" behind the challenged activity. *Id.* at 597.

The court in *Fitzgerald* found that the racing association's eviction of the plaintiff must be considered a disciplinary action of the State. The critical fact noted by the court was a meeting between the officials of the Mountain Laurel Racing Association, who were not employed by the State, and two racing officials – namely a racing secretary and a presiding judge, who confirmed the allegations against the plaintiff. The court found that, although those racing officials were employed and paid by Mountain Laurel, they were acting pursuant to their delegated authority granted by the State to oversee the conduct of the races. Thus, the *Fitzgerald* court determined that the racing officials, while acting in their official capacity, participated in the decision to expel the plaintiff by "telling Mountain Laurel that Fitzgerald was violating Commission Rules and by approving the ensuing expulsion." *Id.* at 599. The court held that "when the state officials with delegated authority to enforce state laws or regulations Participate with management in the decisional process to expel for a violation of a State Commission Rule is the requisite nexus under [*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1979)] established." *Id.* at 600.

Applying the forgoing to the matter *sub judice*, the court concludes that there is sufficient State involvement to satisfy the close nexus test and render Moreno's expulsion a State action. To begin with, here, as in *Fitzgerald*, Plaintiff is accused of violating a regulation of the Pennsylvania State Horse Racing

Commission. Specifically, Moreno is alleged to have violated 58 Pa. Code § 163.302 (prohibiting possession of equipment for hpyodermic ejection).[6] The court further finds that there was State involvement at every stage of the operative facts. For example, (1) the alleged violations were discovered by two state inspectors; (2) the investigation into these allegations, which at the time of this memorandum is still ongoing, is being conducted by state officials at a state laboratory; (3) the evidence was confiscated or obtained by state inspectors and a state veterinarian; and (4) Mark Loewe contacted state stewards to request that Moreno's horses be scratched. Testimony shows that the stewards did scratch at least one of Moreno's horses that was scheduled to race, but refused to scratch other horses until the results of the lab testing were returned. As demonstrated by the preceding facts, there is evidence of significant State involvement in both the discovery of the alleged violations and the enforcement of the sanctions issued by Loewe.

      The extent of State involvement in the actual decision to levy sanctions against Plaintiff is more difficult to ascertain. Loewe testified that he learned from Racing Secretary David Bailey that Moreno was found with syringes. Subsequently, two meetings were held, both of which were attended by Moreno, Loewe, Pincus, and Bailey. In *Fitzgerald*, a critical fact was a similar meeting between Mountain Laurel's management and the Racing Secretary who confirmed the allegations. Moreover, the court finds that the Racing Secretary was acting pursuant to his delegated authority from the State to oversee the conduct of the races. Indeed, the regulations of the Pennsylvania State Horse Racing Commission clearly define the

---

[6] Plaintiff is also accused of violating the terms of his stall agreement, a private contract between himself and Mountainview and the Turf Club, as well as the terms of the 2012 Horsemen's Guide.

duties of the Racing Secretary. *See* 58 Pa. Code §§ 163.391-398. Furthermore, the regulations define "racing officials" to include, *inter alia*, the Racing Secretary, 58 Pa. Code § 163.332, and state that "racing officials shall be subject to approval by the Commission at all times during the meetings. The officials shall enforce this chapter and shall render regular written reports of the activities and conduct of the race meetings to the Commission," 58 Pa. Code § 163. 331. The court therefore finds that, as in *Fitzgerald*, to the extent that Racing Secretary David Bailey was involved, he was acting in his official capacity and pursuant to powers delegated from the State.

      Defendants claim that, notwithstanding Bailey's presence at the two meetings, he was not consulted in the decision-making process. Loewe testified that the only person with whom he consulted was Christopher McErlean, Corporate Vice President, PNGI. Nevertheless, it is clear that Loewe, in making his decision, relied on information that he had received from Bailey and the state inspectors. By meeting with a racing official and relying upon information received from state employees, and by subsequently contacting the state stewards to request that the sanctions be enforced, the court finds a sufficient nexus between the challenged sanctions and the State. If the court were to adopt Defendants' reasoning, the close nexus test would turn on whether a private actor asked a state actor a simple question such as "you're thoughts?" A decision on whether State action has occurred should not hinge on such minutia, but must instead be decided, as instructed in *Fitzgerald*, by looking at the "totality of the circumstances" of the particular case. 607 F.2d at 599. Having done so here, the court finds that the sanctions must be considered a disciplinary act of the State, and the State must therefore comport with the strictures

of the Due Process Clause of the Fourteenth Amendment and the applicable racing regulations.[7]

Defendants argue that Plaintiff is not entitled to the protections set forth in 58 Pa. Code § 165.231, titled Hearing Rights, because he has not formally been ejected. The court disagrees and finds that the August 3, 2012 sanctions of expelling Moreno's horses, scratching him from races that his horses had entered, and forbidding him from participating in future races, is tantamount to an ejection for the same reasoning in set forth in *Fitzgerald*. *See* footnote 2, *supra*. Specifically, 58 Pa. Code § 165.231 provides,

> (a) The Commission or an association licensed by the Commission shall have the right and obligation to deny access or eject from facilities of a track a patron or licensee whose presence or conduct is deemed detrimental to the best interests of racing or to the orderly conduct of a racing meet.
>
> b) At the time of or immediately following ejectment of or denial of access to a licensee, the association or Commission agents acting therein shall advise the licensee in writing of his right to demand a hearing by mailed service of the form of notice as shall from time to time be prepared and supplied by the Commission. The form of notice shall be in a form prepared by the Commission and shall be mailed to the most current licensed address of the ejectee by certified return receipt mail.
>
> c) The notice shall advise the ejectee that he shall have a right to demand a hearing upon the ejection if written demand for the same is served upon the association in question and is received by the executive offices of the Commission no later than 48 hours following receipt by the

---

[7] The court further notes that, under the terms of the Stall Agreement, a violation of the agreement can result in penalties by action of the Racing Secretary. Term No. 11 states "Any violation of these rules may subject Applicant to refusal of all entries, loss of stalls, liens and/or eviction *by action of the Racing Secretary*." (Def. Ex. B) (emphasis added). Thus, although the sanctions were decided by Loewe, and the formal ejection was signed by "K. Russell," a Director of Security, the authority to issue sanctions for violations of the stall agreement was held by the Racing Secretary, a racing official.

> ejectee of the notice confirming ejection. If an ejectee shall timely file a demand for a hearing, the hearing shall be scheduled within 48 hours of the time of receipt of the demand or as soon thereafter as possible. The hearing shall be at the executive offices of the Commission. Notice of the date and time of the hearing shall be forwarded to the most current licensed address of the ejectee and to the executive office of the association.

58 Pa. Code § 165.231(a, b & c). Notably, the notice and hearing requirements in this section are applicable where either the Commission or a private association ejects *or denies access* to a licensee. Defendants argue that Plaintiff has neither been ejected nor denied access to the Penn National because he can still enter Penn National, eat there, and gamble, if he so desires. Loewe conceded that the sanctions amount to a "denial to participate" at the track, but not a "denial of access." The court is unmoved by this argument. Evicting a horse trainer's horses and precluding him from racing at a track are sanctions that so severely limit the trainer's access to the track facilities that they effectively constitute a "denial of access." Consequently, Plaintiff is entitled to the notice and hearing rights in 58 Pa. Code § 165.231.

Having found State action present, this case is properly before this court pursuant to 42 U.S.C. § 1983. The court will now consider the preliminary injunction factors.

The court has little trouble finding that the possibility of irreparable harm to Plaintiff outweighs any harm to the Defendants if relief is granted. The allegations at issue imply dishonest racing which could cause irreparable injury to Moreno's business and reputation. The sanctions also have the effect of denying him his right to pursue his license to train horses. Meanwhile, Defendants have presented no evidence of grave harm to Penn National or to the public if Moreno continues activities at the track, aside from the stated desire to maintain a positive public

13

perception. *See Fitzgerald*, 607 F.2d at 601 (denial of right to use license and harm to business and reputation sufficient to warrant issuance of preliminary injunction where no evidence of grave harm to racing association or public resulting from continued participation at the track).

The final consideration is Plaintiff's likelihood of success on the merits. Plaintiff need not prove that he will be successful on the underlying claim, but rather must show a "reasonable probability" of success on the merits. At the hearing, the court entertained an abundance of testimony regarding the facts surrounding the alleged violations. These facts, however, are relevant to the propriety of the ejection and are more appropriate for a hearing in front of the Commission. In this instance, the court must assess the likelihood of success of Plaintiff's Section 1983 claim and not the likelihood of Plaintiff's success at his hearing before the Commission.

In order to prevail on a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show (1) that he possessed a life, liberty, or property interest within the meaning of the Fourteenth Amendment, and (2) that he did not have procedures available to him that would provide him with "due process of law." *Rockledge Dev. Co. v. Wright Township*, 2011 WL 588068, at *2 (M.D. Pa. Feb. 10, 2011) (citing *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)). More specifically, a plaintiff must prove each of the following five elements in relation to a Section 1983 procedural due process claim:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Id.* (citing *Sample v. Diecks*, 885 F.2d 1099, 1113-14 (3d Cir. 1989)).

The court finds that there is a "reasonable probability" of Plaintiff's success on his Section 1983 claim. The court has already found that the challenged action involves a State action. Furthermore, this court has already found that a horse trainer's license exhibits sufficient indicia of a liberty or property interest to survive a motion to dismiss. *See Adamo v. Dillon*, Docket No. 1:10-CV-2382, 2011 U.S. Dist. LEXIS 24508 (M.D. Pa. March 10, 2011). In a bench trial held in *Adamo*, this court heard credible testimony from the former acting executive secretary of the Pennsylvania State Horse Racing Commission that a hearing may be scheduled one to five months after it is requested, and it could take two or three additional weeks before the commissioners make their decision. (*See* Bench Trial Tr., Docket No. 1:10-CV-2382, p. 80.) In *Barry v. Barchi*, 443 U.S. 55 (1979), a case involving a suspended horse trainer's license, the Supreme Court found a state law that specified no time in which a hearing must be held, and afforded the Board as long as thirty days after the conclusion of the hearing in which to issue a final order adjudicating the matter did not constitute a speedy resolution, and the statute violated the due process clause of the Fourteenth Amendment. Here, 58 Pa. Code § 165.231(b) & (c), states only that a hearing need be *scheduled* within 48 hours and does not dictate that a hearing be held or a decision rendered within a certain amount of time. *See Luzzi v. State Horse Racing Comm'n*, 548 A.2d 659, 663 (Pa. Commw. Ct. 1988).

By way of a letter from defense counsel dated August 20, 2012, the court has learned that a hearing has been scheduled regarding Moreno's August 14, 2012 ejection for August 28, 2012. The hearing notice attached to the letter specifically states that the Commission's actions of August 3, 2012 will not be

addressed at the hearing, because those sanctions "do not constitute refusal of admission to, nor ejection from" Penn National's facilities. This, however, is in contradiction to the court's determination that the August 3, 2012 sanctions are tantamount to a constructive ejection and a denial of access. The test is not whether Plaintiff is denied *admission* to the facilities (it is conceded that Plaintiff can enter Penn National and can observe races), but rather whether Plaintiff is denied *access* to the track facilities. Accordingly, using the August 3, 2012 date as the starting point, the hearing in this case is scheduled for 25 days after the ejection and denial of access. In *Barchi*, a 30 day delay was sufficient for the Court to find a constitutional violation. The court can not, and need not, conclusively determine whether these circumstances amount to a violation of Plaintiff's constitutional rights to due process. However, because the August 28, 2012 hearing will be held 25 days after the Plaintiff's denial of access from Penn National's facilities and will *not* address the August 3, 2012 sanctions, the court finds that there is a reasonable probability that Plaintiff will be successful on the merits of his due process claim.

      At the conclusion of the hearing, Plaintiff made several oral motions that the court took under advisement. First, Plaintiff moved the court for declaratory relief as to whether the August 3, 2012 sanctions, which included a provision that Moreno remove all his horses from Penn National facilities, constituted an ejection such that he may avail himself of the notice and hearing requirements of 58 Pa. Code § 165.231. For the reasons explained above, the court finds the August 3, 2012 sanctions do constitute an ejection as well as a denial of access and thus Moreno is entitled to exercise the rights afforded to him by 58 Pa. Code § 165.231.

Plaintiff also moved for a court order to prevent the Commission from hearing Plaintiff's appeal and requested that an unbiased third-party be designated by the court to hear the appeal. Plaintiff argues that the Commission can not be impartial, and thus Plaintiff would not receive a "meaningful hearing" as described in *Barry v. Barchi*. Plaintiff did not cite any other authority to support his argument or any evidence that the Commission is impartial. The court will not grant the motion based on that limited argument.

Plaintiff also made an oral motion that the court take notice that the August 14, 2012 ejection constitutes a violation of the court's August 10, 2012 order. The court finds no basis for this argument because a letter attached to the order expressly states that the ejection is subject to the court's August 10, 2012 order.[8]

Lastly, Defendants filed a Motion for Modification of the Court's August 10, 2012 Order requesting that Moreno post security for the injunction pursuant to Federal Rule of Civil Procedure 65(c), which requires that a temporary restraining order be entered only upon the movant's posting of security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Defendants argue that a bond in the amount of $150,000 is necessary to protect against liability and for prevailing party attorneys' fees under 42 U.S.C. § 1983. However, in light of this court's holding, Defendants can not be said to have been "wrongfully enjoined or restrained." Moreover, the award of attorneys' fees is premised on the argument that Defendants will be the prevailing party because Moreno has no likelihood of success

---

[8] As mentioned above, Plaintiff also moved the court to amend his pleadings. At the hearing, the court instructed Plaintiff to file a paper motion on this request.

17

on the merits. The court, as stated above, disagrees. Thus, Defendants' motion will be denied.

**IV.** <u>**Conclusion**</u>

In short, the court finds that the requisite State action for a Section 1983 action was present in the challenged action. The court further finds that Plaintiff has established the essential requirements for the issuance of a preliminary injunction.

s/Sylvia H. Rambo<br>United States District Judge

Dated: August 22, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TITO MORENO,**<br><br>  Plaintiff<br><br>  v.<br><br>**PENN NATIONAL GAMING, Inc.**<br>**A.K.A. HOLLYWOOD CASINO AT**<br>**PENN NATIONAL RACE COURSE,**<br>**and MARK LOEWE, as Director of**<br>**Racing and as an Individual,**<br><br>  **Defendants** | **Civil No. 1:CV-12-1553**<br><br><br><br><br>**Judge Sylvia H. Rambo** |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED** that Plaintiff's application for a preliminary injunction is **GRANTED**. Defendants and their officers, agents, employees and all other persons acting in concert with them hereby are enjoined and restrained from excluding Moreno from participating at Penn National, from excluding Moreno's horses from entering races at Penn National, from ordering Moreno to remove his horses from the grounds of Penn National and from preventing Moreno from transferring his horses prior to Moreno receiving a hearing or until further order of this court. It is **FURTHER ORDERED** that Plaintiff's oral motion for declaratory relief that the August 3, 2012 sanctions constitute an ejection is **GRANTED**. Plaintiff's remaining oral motions are **DENIED.** Lastly, Defendant's Motion for Modification of the Court's August 10, 2012 Order (Doc. 14) is **DENIED**.

  s/Sylvia H. Rambo
  United States District Judge

Dated: August 22, 2012.