IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TITO MORENO,** | : | |
| **Plaintiff** | : | **Civil No. 1:CV-12-1553** |
| | : | |
| **v.** | : | |
| | : | |
| **PENN NATIONAL GAMING, INC.** | : | |
| **A.K.A. HOLLYWOOD CASINO AT** | : | |
| **PENN NATIONAL RACE COURSE,** | : | **Judge Sylvia H. Rambo** |
| **and MARK LOEWE, as Director of** | : | |
| **Racing and as an Individual,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**M E M O R A N D U M**

Presently before the court are two motions: (1) Defendants' Motion to

Vacate August 22, 2012 Order Granting Preliminary Injunction (Doc. 27); and (2)

Plaintiff's Motion to Overturn the Ejection of Tito Moreno Because 58 Pa. Code §

165.231 is Unconstitutional (Doc. 30).  Both motions stem from this court's granting

of Plaintiff's motion for a preliminary injunction (Doc. 20) wherein Plaintiff, a

licensed horse trainer, argued at a hearing before this court that his constitutional

rights to due process were violated as a result of sanctions issued against him without

a hearing before the Pennsylvania State Racing Commission (the "Commission").

For the following reasons, Defendants' motion will be denied and Plaintiff's motion

will be granted.


**I.**        **Background**

       **A.**    **Facts**

The underlying facts of this case are discussed more fully in this court's

August 22, 2012 memorandum and order granting Plaintiff's request for a

preliminary injunction (Doc. 20; *Moreno v. Penn Nat'l Gaming, Inc.*, 2012 U.S. Dist. LEXIS 118551 (M.D. Pa. Aug. 22, 2012).)  For present purposes, it is sufficient to state the following as background.

On August 1, 2012, two inspectors of the Pennsylvania State Racing Commission ("state inspectors") witnessed Moreno and his son exit a stall in Barn 4 at Penn National with two syringes and an injectable bottle of Catosal.  Pennsylvania state racing regulations provide that it is illegal to possess injection equipment on the track grounds.  *See* 58 Pa. Code § 163.302(3).  Defendant Mark Loewe, Vice President of Racing at Penn National, was informed of the incident by David Bailey, Racing Secretary.  Loewe scheduled a meeting with Moreno on August 3, 2012, to discuss the incident and the actions that would be taken in response to the alleged violations.  Following a meeting between Loewe and Plaintiff's counsel, Alan Pincus, Loewe acquiesced to Pincus's request to issue a series of sanctions against Moreno in lieu of a formal ejection.  On August 3, 2012, Loewe issued the following sanctions ("August 3 Sanctions"):

> Effective as of this date, no entries will be accepted on Mr. Moreno's horses at any PNG property prior to the release of any information or findings of the PSHRC.
>
> Any horses currently In To Go will be scratched.  (A special exemption has been made for Top Exchange due to his entry in a Stake Race on August 3.)
>
> Any further violation of any Penn National rule or policy, or should Mr. Moreno receive any other rule violations from any other recognized jurisdiction, will result in immediate ejection from the grounds of Penn National Race Course and revocation of all racing privileges.
>
> No horses currently under Mr. Moreno's care may be transferred without the approval of the racing office.

> All horses under Mr. Moreno's care must be off the
> grounds of Penn National by Monday August, 13 at 12
> noon.
>
> Penn National reserves the right to take further action after
> the findings of the PSHRC have been released.

On August 4, 2012, Moreno appealed the sanctions.  Moreno argued
that the sanctions amounted to an "ejection" or at least a "constructive ejection" thus
entitling him to a hearing under the state horse racing regulations.  The Commission
did not grant Moreno's request for an appeal, asserting that because Moreno was not
formally ejected, he was not entitled to a hearing under the regulations.

### B.   Procedural History

In light of the Commission's refusal to grant Plaintiff's request for an
appeal, Plaintiff filed a complaint in this court requesting a temporary restraining
order and preliminary injunction.  (Doc. 1.)  Plaintiff argued that the severity of the
August 3 Sanctions rendered those sanctions tantamount to an ejection and
Defendants' failure to provide a hearing under 58 Pa. Code § 165.231 violated his
rights to due process.  On August 10, 2012, this court granted Plaintiff's request for a
temporary restraining order and preliminary injunction.  (Doc. 6.)  The court also
scheduled a hearing on the preliminary injunction for August 16, 2012.  On August
14, 2012, Mountainview and the Turf Club formally ejected Moreno from Penn
National facilities ("August 14 Ejection").  Following the August 16, 2012 hearing,
this court issued a memorandum and order granting Plaintiff's motion for a
preliminary injunction.  (Doc. 20.)  In that memorandum, the court first rejected
Defendants' jurisdictional argument, finding sufficient evidence of state action to

support a Section 1983 claim.[1]  The court also found that the severity of the August 3 Sanctions were tantamount to an ejection,[2] thus entitling Plaintiff to the notice and hearing rights in 58 Pa. Code § 165.231.  The court then addressed the preliminary injunction criteria.  After finding that the possibility of harm to Plaintiff outweighs any harm to the Defendants, the court considered Plaintiff's likelihood of success on the merits.  To that end, the court was informed by way of letter from defense counsel dated August 20, 2012, that a hearing was scheduled for August 28, 2012, regarding Moreno's August 14 Ejection.  The hearing notice, however, made clear that the hearing would not address the Commission's August 3 Sanctions because those sanctions "do not constitute refusal of admission to, nor ejection from" Penn National's facilities.  The court found that because the hearing would not address the "constructive" ejection of August 3, 2012, and was scheduled for 25 days after that constructive ejection, Plaintiff had a "reasonable probability" of success on the merits of his due process claim.  *See Barry v. Barchi*, 443 U.S. 55 (1979) (finding that a state law that specified no time in which a post-suspension hearing must be held and affords as long as 30 days after the conclusion of the hearing before a final order adjudicating the case must be issued violated the Due Process Clause of the Fourteenth Amendment.)

---

[1]  As evidence of state involvement, the court noted that: (1) the alleged violations were discovered by two state inspectors; (2) the investigation into the allegations is being conducted by state officials at a state laboratory; (3) the evidence was confiscated or obtained by state inspectors and a state veterinarian; (4) and Racing Secretary David Bailey, acting pursuant to his delegated authority from the State to oversee the conduct of horse races, was present at two meetings where the decision to levy sanctions against Moreno was made.

[2]  The court noted that the notice and hearing requirements in the regulations are applicable where the Commission or a private association ejects *or denies access* to a licensee.  The court found that the sanctions amounted to, at the least, a denial of access to the track, thus entitling Plaintiff to the notice and hearing rights in 58 Pa. Code § 165.231.

4

On August 28, 2012, a hearing was held before Hearing Officer Ruth D. Dunnewold ("August 28 Hearing").  The hearing, however, addressed both the August 14 Ejection of Moreno *and* Penn National's August 3 Sanctions against Moreno.[3]  On September 6, 2012, the Commission entered an Adjudication and Order upholding both the August 3 Sanctions and the August 14 Ejection.  (Doc. 27-3.)

## II.          Discussion

Defendants move to vacate the court's August 22, 2012, order granting a preliminary injunction because circumstances have changed thus eviscerating the justification for the injunction.  Specifically, Defendants argue that because Plaintiff has now had a hearing that addressed both the August 3 Sanctions and the August 14 Ejection, the court's procedural due process concerns which formed the basis of the injunction are now moot.

Plaintiff counters with two arguments.  First, Plaintiff argues that the court must find 58 Pa. Code § 165.231 unconstitutional and that the injunction should not be vacated until such a ruling is made.  This argument forms the basis of Plaintiff's Motion to Declare 58 Pa. Code § 165.231 Unconstitutional, which was filed simultaneously with Plaintiff's response to Defendants' motion, and will be discussed further below.  Plaintiff's second argument is, in essence, that the August 28 Hearing was a farce.  The court will first resolve this issue before addressing the constitutional issue.

---

[3] On August 27, 2012, the Commission issued a revised hearing notice, indicating that the hearing would address both the August 3 Sanctions and the August 14 Ejection.  (Doc. 27-1.)

Plaintiff argues that, at the hearing, he was prevented from developing what he believes were relevant arguments regarding the reasonableness of the ejection.  Specifically, Plaintiff contends that he tried to question witnesses regarding the track steward's and Defendants' past practices of ejecting individuals who have been accused of behavior similar to Plaintiff's.  The court has reviewed the hearing transcript and it does appear as though Plaintiff was attempting to cross-examine Mark Loewe regarding the Commission's unequal treatment of other alleged violators in an attempt to show that Plaintiff's ejection was unreasonable.  This line of questioning was met with constant objections by defense counsel which were routinely sustained because the hearing officer found the questioning to be irrelevant to the issue of whether Moreno was ejected based on a reasoned determination.  Following numerous objections, Plaintiff, at the behest of his attorney, walked out of the hearing.  Plaintiff's counsel stated:

> Look, there's no point to going on with the hearing if you won't let us defend ourselves.  We'll just stop now.  You can do whatever you want.  It's ridiculous.  It really is.  We'll take our chances in Commonwealth Court.  Come on, Tito.

(Doc. 36-1, Hearing Tr., p. 91).  In accordance with 58 Pa. Code § 165.183(l), the hearing officer resumed the hearing and Penn National proceeded to present the remainder of its case.  The following week, the Commission entered its Adjudication and Order upholding both the August 3 Sanctions and the August 14 Ejection of Plaintiff.  (Doc. 27-3.)

6

Plaintiff, however, never appealed the Commission's order, and the time to do so has now expired.[4]  Plaintiff has indicated both in his brief in opposition to Plaintiff's motion and in communications to this court that he does not intend to file an appeal to the Commonwealth Court, and instead wishes to argue before this court the constitutionality of 58 Pa. Code § 165.231.  (*See* Doc. 29 at 1 ("The crux of Moreno's argument [in opposition to the motion to vacate the preliminary injunction] is that it is now the time for this Court to rule on the Constitutionality of 58  Pa. Code 165.231."); *see also* Doc. 35-1, Email from Alan Pincus, Esq., to the court dated 9/24/12 ("No appeal has been filed with Commonwealth Court although I believe we have until October 5, 2012 to do so.  At this time we intend to pin our hopes on our belief that Pa. Code 165.231 as written and as applied is Unconstitutional.  Since a motion to that effect is before Judge Rambo we believe it would be redundant to bring that issue to Commonwealth Court.").)

In so far as Plaintiff opposes Defendants' motion to vacate the preliminary injunction because the hearing was a "farce," the court finds that Plaintiff should have taken that issue up with the Commonwealth Court.  Plaintiff's disagreement with the hearing officer's rulings on Defendants' objections, which caused him to walk out of the hearing, and his presumed disagreement with the ultimate outcome of the adjudication, are issues that could be argued before the Commonwealth Court pursuant to Moreno's absolute right to appeal under 58 Pa.

---

[4] Pursuant to 58 Pa. Code § 165.185 and 42 Pa.C.S. § 763, Plaintiff had 30 days after the entry of the Commission's Adjudication and Order to appeal the decision to the Commonwealth Court. Having issued the Adjudication and Order on September 6, 2012, the 30-day period would have expired on October 8, 2012.  The court's review of the Commonwealth Court's online docket reveals that no appeal has been filed as of this date.  (*See also* Doc. 36, Def.'s Memo. in Opp. to Pl.'s Mot., p. 7 of 24 (confirming that no appeal was filed as of October 9, 2012).)

Code § 165.185 and 42 Pa.C.S. § 763.  This court will not substitute itself for the Commonwealth Court and, in effect, permit Plaintiff to do an end run around Pennsylvania appellate procedure in determining the fairness of the hearing.  To do so would, in essence, turn this court into an appellate court for state court or administrative decisions.  This is improper.  This argument is therefore rejected.

Plaintiff's second argument in response to Defendants' motion, that 58 Pa. Code § 165.231 is unconstitutional both as applied and as written, also forms the basis for Plaintiff's Motion to Overturn the Ejection of Tito Moreno Because 58 Pa. Code § 165.231 is Unconstitutional.  Defendants argue that the court should abstain from ruling on Plaintiff's constitutionality claims pursuant to the *Younger* abstention and the *Rooker-Feldman* doctrines.  Alternatively, Defendants argue that even if the court does not abstain from ruling on the constitutionality issues, Plaintiff lacks standing to challenge the constitutionality of the state regulation because he has suffered no injury-in-fact.  For the reasons set forth below, the court declines to abstain from ruling and will address the constitutionality of 58 Pa. Code § 165.231.

## A.    *Younger* Abstention

Under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding.  However, the "abstention rarely should be invoked and is only appropriate in a few carefully defined situations." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citations omitted).  A *Younger* abstention is appropriate only when (1) there are ongoing state proceedings pending that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings

afford an adequate opportunity to raise federal claims. *Miller v. Mitchell*, 598 F.3d 139, 146 (3d Cir. 2010). The issue here is whether state proceedings were "on going" or "pending" at the time Plaintiff filed this action in federal court. A review of the procedural history shows that the complaint and motion for a temporary restraining order and preliminary injunction were filed in this court prior to the scheduling and holding of the August 28 Hearing. It is true, however, that the state action need not actually pre-date the federal action for *Younger* to apply. *See Tucker v. Ann Klein Forensic Center*, 174 F. App'x 695, 697 (3d Cir. 2006) (citing *For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1217 (11th Cir. 2002)). Rather, the Supreme Court has held that federal courts are to abstain if the state action was commenced "*before any proceedings of substance* on the merits have taken place in federal court," *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (emphasis added), or if "the federal litigation [is] in an embryonic stage and no contested matter [has] been decided," *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975).

Therefore, the relevant question is whether proceedings in this court had advanced beyond an "embryonic stage" such that the subsequent state administrative proceeding does not require this court to abstain pursuant to *Younger*. This question was answered by the Supreme Court in *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238 (1984), where the Court found that a "federal court action in which a preliminary injunction is granted has proceeded well beyond the 'embryonic stage,' . . . and considerations of economy, equity and federalism counsel against *Younger* abstention at this point." To reiterate, Plaintiff filed in this court a complaint and motion for temporary restraining order and preliminary injunction on August 9, 2012. (Doc. 1.) On August 10, 2012, this court entered a temporary restraining

order and scheduled a hearing on the preliminary injunction for August 16, 2012. (Doc. 6.)  Following the hearing, the court entered an order on August 22, 2012, granting a preliminary injunction.  (Doc. 20.)  Subsequently, on August 28, 2012, the Commission held a hearing on the August 3 Sanctions and August 14 Ejection, in accordance with the revised notice of hearing, issued on August 27, 2012. Accordingly, because the court granted a preliminary injunction *before* the Commission's hearing, it is clear that the federal action proceeded beyond an "embryonic stage" at the time the state action commenced and the *Younger* abstention does not apply.[5]

### B.    The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine[6] provides that "lower federal courts may not sit in direct review of the decisions of a state tribunal."  *Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir. 1998).  The doctrine is a "narrow doctrine," *Lance v. Dennis*, 546 U.S. 459, 464 (2006), and "is confined to cases brought by state-court

---

[5]    Defendants rely heavily on *Thompson v. Dixon*, 2005 U.S. Dist. LEXIS 14931 (E.D. Pa. July 26, 2005), a case with similar, yet distinguishable, facts.  There, the plaintiff, a horse trainer, sought to challenge the Commission's decision to suspend his license.  However, prior to any involvement by the federal court, the suspension was upheld following a *de novo* hearing before an administrative law judge, which was later affirmed by the Commonwealth Court.  The plaintiff did not file leave to appeal the Commonwealth Court's decision to the Pennsylvania Supreme Court.  Several months later, the plaintiff petitioned the Commission to re-open the administrative proceedings due to newly-discovered evidence.  The Commission denied the request as untimely.  The plaintiff then filed a motion for a temporary restraining order and preliminary injunction alleging that the Commission's "summary denial" of his petition to re-open the administrative hearing violated his civil rights.  The district court dismissed that case *sua sponte* pursuant to the *Younger* doctrine finding, *inter alia*, that the Commission's previous decision declining to re-open the case, which the plaintiff did not appeal to Commonwealth Court, amounted to a "pending" state proceeding.  *Id.* at *5-6.  The case *sub judice* is clearly distinguishable because the Commission rendered its decision to uphold Plaintiff's ejection only *after* this court issued and temporary restraining order and preliminary injunction.  Thus, *Thomspon* is not on point.

[6]    The *Rooker-Feldman* doctrine derives from two Supreme Court decisions:  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Because jurisdiction to review a state court's decision rests solely in the United States Supreme Court, *see* 28 U.S.C. § 1257, federal district courts lack subject matter jurisdiction over challenges that are the functional equivalent of an appeal of a state court judgment, *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004), "even if those challenges allege that the state court's action was unconstitutional," *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). "Although § 1257 refers to orders and decrees of the highest state court, the *Rooker-Feldman* doctrine has been applied to final decisions of lower state courts." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005).

A claim is the functional equivalent of an appeal if: (1) "the federal claim was actually litigated in state court prior to the filing of the federal action"; or (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *Id.*  A federal claim is inextricably intertwined with a state adjudication when the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or the federal court must take action that would negate the state court's judgment. *Id.* at 581.

Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable for the same reason the *Younger* doctrine does not apply: Moreno filed in federal court prior to the commencement and resolution of the state court proceedings.  (Doc. 37 at 5.) Plaintiff bases this argument on the Supreme Court's decision in *Exxon Mobil Corp.*

11

*v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), which held that the *Rooker-Feldman* doctrine "is confined to cases of kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments *rendered before the district court proceedings commenced and inviting* [the] district court to review . . . those judgment." *Id.* (emphasis added). The court agrees and finds that the *Rooker-Feldman* doctrine is inapplicable because this action was not filed by Plaintiff in response to losing in state court.  In fact, Plaintiff initiated this action before any state action was taken.  *See Council Rock Sch. Dist. v. Bolick*, 2010 U.S. Dist. LEXIS 135346, *26 (E.D. Pa. Dec. 22, 2010) (declining to apply *Rooker-Feldman* on same grounds).

        Additionally, every circuit that this court has identified that considered whether the *Rooker-Feldman* doctrine applies to judicial *and* administrative decisions has rejected that argument.  In *The Ivy Club v. Cary Edwards*, 943 F.2d 270 (3d Cir. 1991), the Third Circuit Court of Appeals refused to apply *Rooker-Feldman* to a state administrative decision.  *Id.* at 284 (citing *Feldman*, 460 U.S. at 282 (1983) ("United States District Court has no authority to review final judgments of a state *court* in judicial proceedings.")); *see also Nat'l R.R. Passenger Corp. v. Pa. Pub. Utility Comm'n*, 342 F.3d 242, 257 (3d Cir. 2003) ("The Supreme Court has made clear . . . that the Rooker-Feldman doctrine applies only to state judicial proceedings, not administrative or legislative proceedings."); *Narey v. Dean*, 32 F.2d 1521, 1525 (11th Cir. 1994) (refusing to extend *Rooker-Feldman* to the decision of a State Personnel Board because "the *Rooker-Feldman* doctrine, unlike that of *res judicata*, applies only to state court decisions, not state administrative decisions."); *Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997)  (Posner, C.J.)

("Countless cases . . . allow people who lose in state administrative proceedings to seek relief in federal court [under Section 1983] . . . . If the *Rooker-Feldman* doctrine is to extend to administrative judgments, it would have to be done by the [Supreme Court]."); *Scott v. Flowers*, 910 F.2d 201, 208 (5th Cir. 1990) (refusing to extend the *Rooker-Feldman* doctrine to a reprimand issued by the Texas Commission on Judicial Conduct because "the Commission can not be regarded as the agent of the state court system.")  Here, the Pennsylvania Horse Racing Commission can not be said to be an agent of the courts, but rather a separate entity that has broad authority over horse racing and betting.[7]  If, however, a decision of an administrative agency is subsequently reviewed and upheld by a state court, then the *Rooker-Feldman* doctrine would apply.  *See Narey*, 32 F.3d at 1525.  Because the *Rooker-Feldman* doctrine does not apply to *unreviewed* administrative decisions, it is inapplicable here.  *Id.*[8]

---

[7]   The Commission was established pursuant to 15 P.S. § 2652 (a), which states:

> Pursuant to the provisions of this act, the State Horse Racing Commission shall have power to supervise generally all thoroughbred horse race meetings in this State at which pari-mutuel betting is conducted. The commission may adopt rules and regulations not inconsistent with this act to carry into effect its purposes and provisions and to prevent circumvention or evasion thereof.

[8]   Defendants rely on *Mayamo-Melendaz v. Alvarez-Ramirez*, 364 F.3d 27 (1st Cir. 2004), to argue for the application of the *Rooker-Feldman* doctrine.  That case, however, is not on point.  In *Mayamo-Melendaz*, the plaintiff, a licensed horse trainer, had his training license suspended by the Racing Board.  The plaintiff subsequently appealed the Racing Board's decision to uphold the five-year suspension to the Puerto Rico Court of Appeals which affirmed the Racing Board's decision.  The plaintiff then filed a Section 1983 action in federal district court in Puerto Rico.  Thus, unlike the present case, the Racing Board's decision was reviewed and upheld by a Puerto Rico appellate court.  Once again, the court noted that "*Rooker-Feldman* is based on the Supreme Court's reading of a statute governing review of state-court [and] *Rooker-Feldman* does not insulate from federal challenge *administrative* proceedings standing alone." *Id.* at 34 (emphasis in original).  The court further stated that "To enjoy enforcement of the Racing Board's sanction, *after its affirmance by the state court*, amounts to a collateral attack on a state court judgment." *Id.* at 33 (emphasis added).  Because this case

(continued...)

C.      **Standing**

Defendants make one final effort to prevent this court from ruling on Plaintiff's constitutional arguments.  Defendants argue that Plaintiff has no standing to challenge the constitutionality of the regulation because he has not shown an "injury in fact" with regard to the application of 58 Pa. Code § 165.231 as it applies to him.  Three well-established constitutional standing requirements are set forth in *Lujan v. Defenders of Wildlife*: 1) "injury in fact" that is "concrete and particularized" and "actual or imminent"; 2) a causal connection between the injury alleged and the "challenged action of the defendant"; and 3) the injury is likely (speculation is insufficient) to be "redressed by a favorable decision."  504 U.S. 555, 560-61 (1992).

Defendants only challenge the "injury in fact" requirement for standing, arguing that Plaintiff was not harmed because he was provided a prompt post-suspension hearing and adjudication.  Moreover, Defendants argue that Moreno suffered no harm as a result of this court's temporary restraining order and preliminary injunction because those orders prevented Penn National from taking any adverse action against Plaintiff.  Plaintiff retorts he has suffered an injury as a result of the Commission's failure to provide a pre-ejection or prompt post-suspension hearing, which resulted in his horses being scratched from multiple races, a denial of access to his horses, a threat to the possession and use of his stalls, and a denial of the ability to practice his profession.  The court finds that Plaintiff has

---

[8](...continued)
did not involve review by a state court, *Mayamo-Melendaz* is distinguishable.

sufficiently shown "injury in fact" and therefore has standing to pursue the instant matter.[9]

### D.      The Constituionality of 58 Pa. Code § 165.231

Having found that Plaintiff has standing to pursue this matter and that neither the *Younger* abstention nor the *Rooker-Feldman* doctrine is applicable in this case, the court may rule on Plaintiff's argument that 58 Pa. Code § 165.231 is unconstitutional.  Plaintiff argues that 58 Pa. Code § 165.231 is unconstitutional both as written and as applied because it violates the Due Process Clause of the Fourteenth Amendment.  Disposition of this issue will resolve both motions presently before the court.  For the reasons stated below, the court finds that 58 Pa. Code § 165.231 fails to pass constitutional muster.

Plaintiff relies exclusively on the Supreme Court's case in *Barry, supra,* to argue that 58 Pa. Code § 165.231 violates the Due Process Clause of the Fourteenth Amendment.  In that case, John Barchi, a licensed harness race trainer, was advised by the New York State Racing and Wagering Board that one of his horses tested positive for a prohibited substance.  As a result, Barchi's license was suspended for fifteen days.  The Court ultimately held that the suspension violated the Due Process Clause of the Fourteenth Amendment because Barchi was not afforded the opportunity for a prompt post-suspension hearing.  Specifically, the Court found that the applicable statute was unconstitutional because "[t]he section specifies no time in which a hearing must be held, and it affords the Board as long as

_____

[9]    Such a holding is consistent with the court's prior finding upon granting the preliminary injunction wherein the court found that "The allegations at issue imply dishonest racing which could cause irreparable injury to Moreno's business and reputation. The sanctions also have the effect of denying him his right to pursue his license to train horses."  (Doc. 20 at 13-14.)

30 days after the conclusion of the hearing in which to issue a final order adjudicating a case." 443 U.S. at 61. The court noted that once a suspension has been imposed, a speedy resolution is paramount because "even a temporary suspension can be severe." *Id.* at 66. In short, the court concluded that the procedure outlined in the statute was deficient because it did not assure a sufficiently prompt hearing and prompt disposition of the issues. *Id.*

Plaintiff argues that he was denied due process because he was not permitted a pre-deprivation hearing before his "quietus" date, explained below, and that he was not afforded a sufficiently prompt post-deprivation hearing. Plaintiff further argues that the Supreme Court's holding in *Barry* requires this court to find 58 Pa. Code § 165.231 unconstitutional. Following a close examination of *Barry* and the requirements of 58 Pa. Code § 165.231, this court agrees that 58 Pa. Code § 165.231 is constitutionally infirm.

As to Plaintiff's argument that he should have been afforded a pre-deprivation hearing, Plaintiff believes that a hearing should have been held before the "quietus date," the date a trainer must vacate his stalls, which, in practice, is 48 hours after the ejection.[10] (Doc. 31 at 3 of 6.) Plaintiff asserts that a trainer's career is effectively over after this date, and a hearing after this date is essentially useless. Plaintiff argues that the quietus date was August 13, 2012, the date he was ordered to vacate his stalls pursuant to the August 3 Sanctions and that a hearing on August 28, 2012 followed by a determination on September 6, 2012 does not come close to giving Plaintiff his required due process before the quietus date. (*Id.* at 3-4.)

---

[10] Plaintiff submits that although ejections are effective immediately, ejectees are given 48 hours to remove their horses as a result of the logistics involved in such an undertaking. (Doc. 31 at 3 of 6.)

In *Barry,* the Supreme Court emphasized that a pre-deprivation evidentiary hearing is not required in every circumstance and an interim or temporary emergency deprivation of a property right may be constitutional, provided that the state has an important interest to protect and probable cause to believe that the plaintiff poses a real and immediate danger to that protected interest. *Gershenfeld v. Justices of the Sup. Ct. of Penna.*, 641 F. Supp. 1419, 1424 (E.D. Pa. 1986) (citing *Barry*, 443 U.S. at 64). The guarantee of a prompt post-deprivation hearing is a critical factor in determining the validity of the previously invoked interim or temporary deprivation of process. *Id.* (citing *Parratt v. Taylor*, 452 U.S. 527, 580 (1981) (holding that the state can only take a property interest without a deprivation hearing if "meaningful" opportunity for post-deprivation hearing is afforded).) Here, there is no doubt that the state has an interest in protecting the integrity of horse racing. *See Barry*, 443 U.S. at 64 ("[t]he state also has an important interest in assuring the integrity of racing carried on under its auspices."). Furthermore, it is reasonable to believe that, on the facts stated above, Plaintiff posed a real and immediate threat to that interest.[11] Thus, there was no constitutional violation provided that a prompt post-suspension hearing was held.

The post-deprivation procedures in 58 Pa. Code § 165.231, however, fail to assure a prompt post-deprivation hearing. A comparison of the statute at issue in *Barry*[12] and 58 Pa. Code § 165.231 reveals the same infirmities. In particular, neither statute specifies a time in which a hearing must be held. Section 165.231

---

[11]   For example, two state inspectors witnessed Plaintiff and his son exit a stall in Barn 4 at Penn National with two syringes and an injectable bottle Catosal, all in violation of 58 Pa. Code § 163.302(3).

[12]   New York Unconsol. Law § 8022 (McKinney 1979).

requires only that a hearing be *scheduled* within 48 hours. *See also Luzzi v. State Horse Racing Comm'n*, 548 A.2d 659, 663 (Pa. Cmmw. Ct. 1988) (the regulation makes clear that "the Commission need not hold a hearing within 48 hours but rather must schedule a hearing as soon as possible.") Thus, there is no provision that assures that the hearing itself take place promptly following a licensee's ejection. Theoretically, such a hearing could be held days, weeks, months or possibly years following the deprivation.[13] Moreover, unlike the New York statute which required a final order adjudicating the case within 30 days after the conclusion of the hearing, the regulation at issue here provides that, where an interested party requests a completed transcript, a final decision shall be rendered within 48 hours of receipt of that transcript.[14] The regulation does not account for the amount of time it takes to complete and deliver a transcript, which, depending on the length of the hearing and the number of cases pending before the Commission, could take several days or several weeks. In short, 58 Pa. Code § 165.231 only requires that a promptly scheduled hearing be held at some undefined point in the future. In practice, the hearing could take place long after significant harm is incurred by an ejectee, unless the ejectee has the wherewithal and resources to apply for a temporary restraining order and preliminary injunction in federal court. Such concerns are similar to the Supreme Court's concerns in *Barry.* Accordingly, the court finds that these concerns

---

[13] In a bench trial held before this court in *Adamo v. Dillon*, this court heard credible testimony from the former acting executive secretary of the Pennsylvania State Horse Racing Commission that a hearing may be scheduled one to five months after it is requested, and it could take two or three additional weeks before the commissioners make their decision. (*See* Bench Trial Tr., Docket No. 1:10-CV-2382, p. 80.)

[14] The regulation also provides that where the ejectee waives receipt of a completed transcript of the hearing, the Commission will render a decision within 48 hours following the conclusion of the hearing. 58 Pa. Code 165.231(e)(2).

render 58 Pa. Code § 165.231 constitutionally infirm on its face under the Due Process Clause of the Fourteenth Amendment.

Plaintiff also argues that the 58 Pa. Code § 165.231 is unconstitutional as applied because the Commission's decision affirming the August 3 Sanctions and the August 14 Ejection was not issued until September 6, 2012. Indeed, if Plaintiff had not applied and received a temporary restraining order and a subsequent preliminary injunction, he would have been forced to remove his horses well before September 6, 2012.[15] Given the potentially grave consequences of a trainer's ejection, the court finds the current system fails to provide an ejectee with a "meaningful hearing at a meaningful time." *Barry*, 443 U.S. at 66. In short, the provisions of 58 Pa. Code § 165.231, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues between Plaintiff and the State. Accordingly, Plaintiff's ejection was constitutionally infirm under the Due Process Clause of the Fourteenth Amendment.

## III.        **Conclusion**

Neither the *Younger* abstention nor the *Rooker-Feldman* doctrine are applicable in this case. Because 58 Pa. Code § 165.231 does not assure a prompt proceeding and prompt disposition to licensees who have been ejected from a race track, the regulation violates Due Process Clause of the Fourteenth Amendment. Accordingly, Defendants' Motion to Vacate August 22, 2012 Order Granting

---

[15] The August 3 Sanctions, which this court considered to be tantamount to an ejection, required the Moreno to remove his horses by August 13, 2012. If the court were to consider the August 14 Ejection as the operative date, then it appears Plaintiff's "quietus" date would be August 17, 2012, which is 48 hours after Plaintiff received notice of the August 14 Ejection.

Preliminary Injunction will be denied, and Plaintiff's Motion to Overturn the Ejection of Tito Moreno Because 58 Pa. Code § 165.231 is Unconstitutional will be granted.[16]

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  November 14, 2012.

---

[16]    Neither motion addresses any specific counts in Plaintiff's amended complaint (Doc. 26), which include: preliminary and permanent injunction (Count I); violation of 42 U.S.C. § 1983 (Count II); declaratory judgment (Count III); tortious interference (Count IV); and breach of contract (Count V).  Because the court is only resolving the issues raised and argued in the motions, the court will refrain from dismissing any counts in the amended complaint at this time.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TITO MORENO,** | : | |
| **Plaintiff** | : | **Civil No. 1:CV-12-1553** |
| | : | |
| **v.** | : | |
| | : | |
| **PENN NATIONAL GAMING, INC.** | : | |
| **A.K.A. HOLLYWOOD CASINO AT** | : | |
| **PENN NATIONAL RACE COURSE,** | : | **Judge Sylvia H. Rambo** |
| **and MARK LOEWE, as Director of** | : | |
| **Racing and as an Individual,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED** that Defendants' Motion to Vacate August 22, 2012 Order Granting Preliminary Injunction (Doc. 27) is **DENIED** and Plaintiff's Motion to Overturn the Ejection of Tito Moreno Because 58 Pa. Code § 165.231 is Unconstitutional (Doc. 30) is **GRANTED**. The court's order granting a preliminary injunction (Doc. 20) shall remain in effect until such time that the Commission vacates the August 3, 2013 sanctions against Moreno and Moreno's August 14, 2012 ejection.

\_\_\_\_s/Sylvia H. Rambo_____
United States District Judge

Dated:  November 14, 2012.